UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JASON KAFUS,

                    Petitioner,

vs.                              Case No.  2:09-cv-112-FtM-36DNF

SECRETARY, DEPARTMENT OF CORRECTIONS
and  ATTORNEY  GENERAL  STATE  OF
FLORIDA,

                    Respondents.
_____/

## OPINION AND ORDER

### I. Status

Petitioner Jason Kafus initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254 on February 6, 2009.[1]  The Petition challenges Petitioner's 2002 state court judgment of conviction for robbery with a firearm and false imprisonment entered in the Twentieth Judicial Circuit Court, Lee County, Florida.  Petition at 1.  Pursuant to the Court's Order, Respondent filed a Response (Doc. #15, Response) and supporting exhibits (Doc. #18, Exhs. 1-

---

[1]The Petition was filed in this Court on February 11, 2009; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." *Alexander v. Sec'y Dep't of Corr.*, 523 F.3d 1291, 1294 n.4 (11th Cir. 2008), *abrogated other grounds*, *Wall v. Kholi*, 131 S. Ct. 1278 (2011).

22).[2]   Petitioner filed a Reply (Doc. #16).   This matter is ripe for review.

## II. Procedural History

### A. Background

On July 1, 2002, Petitioner was charged by Information with one count of robbery with a firearm and one count of false imprisonment. Exh. 22, Vol. 1 at 10-11. On June 12, 2003, defense counsel filed a motion to suppress "as evidence any out of court or in court identification of the Defendant by the alleged victim." Exh. 22, Vol. 2 at 29-30. Petitioner complained that the pre-trial photographic lineup was improper and also contended the "one-on-one" show up was improper. *Id.* On June 25, 2003, the trial court heard Petitioner's motion. Exh. 22, Vol. 1 at 36-74. At the conclusion of the hearing, the trial judge denied Petitioner's motion to suppress. *Id.* at 73-74.

On July 16, 2003, the case proceeded to a jury trial. At the conclusion of the trial, the jury returned a guilty verdict on both counts as charged. *Id.* at 77. On September 8, 2003, the court sentenced Petitioner to twenty-five years imprisonment with a ten-year minimum mandatory sentence on the first count, and a

---

[2]The page numbers referenced within this Order, are to the page of the identified pleading as it appears on the Court's case management electronic computer filing system. Because the Exhibits are filed in paper format only, the Court will reference a document contained within a particular exhibit by "Exh. _." To the extent possible, the Court will further reference the document by its page number and/or by bates stamp number.

concurrent five-year sentence on the second count.  Exh. 22, Vol. 4 at 142-143.

## B. Direct Appeal

Petitioner, through counsel, filed a direct appeal raising one issue: whether the trial court erred in denying Petitioner's motion to suppress.  Exh. 1. The State filed a brief in response.  Exh. 2. The appellate court denied Petitioner relief on this claim and entered an order *per curiam* affirming the trial court.  Exh. 3, *Kafus v. State*, 888 So. 2d 636 (Fla. 2d DCA 2004)[table].

## C. Rule 3.850 Motion

On September 6, 2005, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (hereinafter "Rule 3.850 Motion"), in which Petitioner raised ten grounds for relief alleging ineffective assistance of counsel.[3] Exh. 5.  The post-conviction court directed the State to respond to Petitioner's Rule 3.850 Motion.  Exh. 6.  The State filed a response, but only responded to the first two grounds for relief. Exh. 7.  On February 23, 2006, the court issued an order adopting the State's response and summarily denied grounds one and two. Exh. 8.

Petitioner appealed the adverse ruling.  On July 26, 2006, the appellate court affirmed the court's denial of grounds one and two,

---

[3]The Court will address those grounds raised in Petitioner's Rule 3.850 Motion only as deemed relevant to the grounds Petitioner raises in the instant Petition.

but reversed and remanded the case to the post-conviction court for a determination as to the remaining eight grounds for relief. Exh. 9. Mandate issued on August 16, 2006. Exh. 10.

On remand, the post-conviction court directed the State to file a supplemental response to address grounds three through ten. Exh. 11. The State filed its supplemental response. Exh. 12. On August 31, 2006, Petitioner filed a motion to supplement his initial Rule 3.850 Motion with three additional claims of ineffective assistance of counsel (grounds eleven, twelve, and thirteen). Exh. 13. Pursuant to the post-conviction court's order, the State filed another response to address the three supplemental claims. Exh. 14. Petitioner filed a reply to the State's responses. Exh. 15. On October 24, 2007, the post-conviction court summarily denied Petitioner's Rule 3.850 Motion and supplemental motion. Exh. 16.

Petitioner appealed the adverse ruling, raising two issues:

(1) whether the trial court erred in denying relief without an evidentiary hearing where appellant set forth legally sufficient grounds for relief and there was no record attached to the trial court's order of denial which showed conclusively relief is not warranted; and

(2) appellant was denied due process of law and subject to a manifest injustice when the trial court summarily denied and this court *per curiam* affirmed, appellant's claim of ineffective assistance of counsel for failing to exercise a peremptory strike or move the trial court for a cause challenge, to remove juror Bryden from appellant's jury panel.

Exh. 17.  The State was not required to file a response.  Response
at 10.  On September 18, 2008, the appellate court *per curiam*
affirmed the post-conviction court's order of denial.  Exh. 18,
*Kafus v. State*, 994 So. 2d 331 (Fla. 2d DCA 2008)[table].
Petitioner filed a motion for rehearing, which the appellate court
denied.  Exhs. 19-20.  Mandate issued on November 24, 2008.  Exh.
21.

### III.  Applicable § 2254 Law

Petitioner filed his timely[4] Petition after April 24, 1996,
the effective date of the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).
Consequently, post-AEDPA law governs this action.  *Abdul-Kabir v.
Quarterman*, 127 S. Ct. 1654, 1664 (2007); *Penry v. Johnson*, 532
U.S. 782, 792 (2001); *Davis v. Jones*, 506 F.3d 1325, 1331, n.9
(11th Cir. 2007).  Under AEDPA, the federal court's review is
"greatly circumscribed and is highly deferential to the state
courts."  *Alston v. Fla. Dep't of Corr.*, 610 F.3d 1318, 1325 (11th
Cir. 2010); *Stewart v. Sec'y Dep't of Corr.*, 476 F.3d 1193, 1208
(11th Cir. 2007).  Essentially, AEDPA altered the federal court's
role in reviewing state prisoner applications in order to "prevent
federal habeas 'retrials' and to ensure that state-court
convictions are given effect to the extent possible under law."

---

[4]The AEDPA imposes a one-year statute of limitations on § 2254
actions.  28 U.S.C. § 2244(d).  Respondent submits that the
Petition is timely filed.  Response at 12.  The Court agrees.

*Bell v. Cone*, 535 U.S. 685, 693 (2002). Several aspects of § 2254, as amended by the AEDPA, are relevant to a review of this Petition.

## A.  Cognizable Claim

A federal court may entertain an application for a writ of habeas corpus from a person in state custody pursuant to a state court judgment only on the grounds that the petitioner is in custody in violation of the United States Constitution or the laws or treaties of the United States.  28 U.S.C. § 2254(a).  A claimed violation of state law is generally insufficient to warrant review or relief by a federal court under § 2254.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000).  Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair."  *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983).

## B.  Exhaustion of State Remedies:

A petitioner, even when asserting grounds that warrant review by a federal court under § 2254, must have first raised such grounds before the state courts, thereby giving the state courts the initial opportunity to address the federal issues.  A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ."  28 U.S.C. § 2254(b)(1)(A).  This imposes a "total exhaustion" requirement in which all of the federal issues must have first been

presented to the state courts. *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). *See also Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003), *cert. denied sub nom. Pruitt v. Hooks*, 543 U.S. 838 (2004). To properly exhaust a claim, a petitioner must present the *same* claim to the state court that he urges the federal court to consider. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (citations omitted); *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004).

As to ineffective assistance of counsel claims, a petitioner must have presented each instance of alleged ineffective assistance to the state court in such a manner that a reasonable reader would understand each claim's particular legal basis and specific factual foundation. *Ogle*, 488 F.3d at 1368 (citations omitted); *Kelley*, 377 F.3d at 1344-45. A state prisoner need not file a petition for *certiorari* with the U.S. Supreme Court in order to exhaust state

remedies because the U.S. Supreme Court is not considered to be a part of a "State's post-conviction procedures." *Lawrence v. State*, 549 U.S. 327, 332 (2007).

When presented with a "mixed" petition, i.e., one containing both unexhausted and exhausted claims, a district court is ordinarily required to either dismiss the petition, *Pliler v. Ford*, 542 U.S. 225, 227 (2004); *Rose v. Lundy*, 455 U.S. 509 (1982), or, in limited circumstances and under the district court's discretion, "grant a stay and abeyance to allow the petitioner to exhaust the unexhausted claim." *Ogle*, 488 F.3d at 1370 (citing *Rhines*, 544 U.S. at 277-79). However, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural rule, the Eleventh Circuit has held that a district court can consider the petition but treat those unexhausted claims as procedurally defaulted. *Ogle*, 488 F.3d at 1370. Additionally, while under the AEDPA a federal court may not grant a habeas petition that contains unexhausted claims, it may deny such a petition on the merits. *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1261 n.26 (11th Cir. 2005).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136 (2002). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer

available, that failure is a procedural default which will bar federal habeas relief, . . . ." *Smith*, 256 F.3d at 1138.

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. *House v. Bell*, 547 U.S. 518, 536-37 (2006); *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). "Cause" ordinarily requires a petitioner to demonstrate "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (quoting *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999)). Constitutionally ineffective assistance of counsel can constitute cause if that claim is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). To show "prejudice," a petitioner must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different." *Henderson*, 353 F.3d at 892.

Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *House*, 547 U.S. at 536; *Edwards*, 529 U.S. at 451; *Henderson*, 353 F.3d at

892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. *See also House*, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that, "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt") (citation omitted).

## C.  Claims Adjudicated in State Court

Even if a claim is federal in nature and has been properly exhausted, it is subject to additional restrictions under § 2254 that reflect a high level of deference to the state court's decision. *See, e.g., Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson*, 527 F.3d at 1146; *Wright v. Sec'y for the*

*Dep't of Corr.*, 278 F.3d 1245, 1253-54 (11th Cir. 2002). "Clearly established Federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008); *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a disparate result. *Brown*, 544 U.S. at 141; *Mitchell*, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." *Early v. Parker*, 537 U.S. 3, 8 (2002); *Mitchell*, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), *cert. denied*, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 120 S. Ct. at 1520).  The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18.  Depending upon the legal principle at issue, there can be a range of reasonable applications. *Yarborough v. Alvarado*, 541 U.S. 652, 663-64 (2004).  Thus, the state court's decision is not subject to federal review *de novo*; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. *Id.* at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. §

2254(d)(2).  Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question.  *Rice v. Collins*, 546 U.S. 333, 338 (2006).  Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Henderson*, 353 F.3d at 890-91.  This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact."  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001) (citation omitted).  An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*.  *Rolling v. Crosby*, 438 F.3d 1296, 1299 (11th Cir.), *cert. denied sub nom. Rolling v. McDonough*, 548 U.S. 913 (2006).

Finally, if the state court fails or declines to rule on the merits of a particular claim raised before it, that claim falls outside of the scope of § 2254(d)(1)'s restrictions and the reviewing federal habeas court owes no deference to the state court decision when evaluating that claim.  *Davis v. Sec'y for the Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003).

## IV. Analysis

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, *San Martin v. McNeil*, 633 F.3d 1257, 1271 (11th Cir. 2011), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. *Schriro*, 550 U.S. at 474.

### A.  Ineffective Assistance of Counsel

Petitioner raises ten grounds of ineffective assistance of trial counsel. *See* Petition. Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as

-14-

the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 688; *see also Bobby Van Hook*, 558 U.S. ___, 130 S. Ct. 13, 16 (2009). Thus, a habeas court's review of a claim under the *Strickland* standard is "doubley deferential." *Knowles v. Mirzayanze*, 556 U.S. 111, 129 S. Ct. 1411, 1420 (2009)(citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006), *cert. denied sub nom. Jones v. Allen*, 127 S. Ct. 619 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)(quoting *Strickland*, 466

U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id.* A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.), *cert. denied sub nom. Ladd v. Burton*, 493 U.S. 842 (1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). A reviewing court need not address the performance prong of the test if the Petitioner cannot meet the prejudice prong, or vice-versa. *Holladay v. Haley*, 209 F.3d 1243,1248 (11th Cir. 2000).

## 1. Failure to Procure Video Expert

In Ground One, Petitioner faults trial counsel for failing to procure an expert in video enhancement to clarify the facial features of the assailant on the surveillance videotape from the Hess gas station and for failing to procure an identification

expert to compare the enhanced video to the facial features of Petitioner. Petition at 3. Petitioner argues that the assailant appeared on the surveillance video for only a matter of seconds. *Id.* at 5. Because the defense's theory of the case was that the assailant on the video was not Petitioner, Petitioner maintains that counsel should have sought the assistance of a video enhancement specialist to substantiate that it was not Petitioner's face on the video surveillance. *Id.* Petitioner argues that defense counsel's failure to seek such assistance from a video expert prejudiced his case because the jury would have heard from an expert that it was not Petitioner who was captured on the videotape. *Id.* at 6. Petitioner further submits that the video evidence was important to the jury because during deliberations the jury asked to see the video and the photographic lineup. *Id.* at 7.

In Response, Respondent notes that Petitioner raised this claim in his Rule 3.850 Motion as his second ground for relief. Response at 16. Respondent directs the Court to the post-conviction court's order denying Petitioner relief on this claim. *Id.* at 18. Respondent argues that Petitioner cannot establish ineffective assistance by defense counsel because the nature of Petitioner's claim is merely speculative. *Id.* Respondent further points out that in addition to the video tape evidence, the victim, who had ample opportunity to observe the Petitioner, positively

identified the Petitioner as the man who robbed her by gunpoint. *Id.*

In Petitioner's Reply, he maintains the same arguments raised in his Petition. *See* Reply. Petitioner also directs the Court to a district court case, "*United States v. Beeler*, F. Supp.2d 136, 149-150 (D. Me. 1999),"[5] in which Petitioner states that the district court found that the enhanced videotape made the tape easier to understand for the jury, and the admittance of the enhanced videotape was in accord with the spirit of the best evidence rule. *Id.* at 2.

Upon review of the record, the Court finds that Petitioner exhausted this claim as he raised it in his Rule 3.850 Motion as his second ground for relief. *See* Exh. 5 at 6-10. The post-conviction court denied Petitioner relief on this claim. Exh. 8 at 1. The State noted the following in its response, which was incorporated by reference by the post-conviction court:

> The record reflects that the videotape was not the only identification evidence considered by the jury. On June 25, 2003, [sic] hearing was held on a motion to suppress [sic] identification of Defendant by Kimberly Moore. The Court held on pages 38 and 39 of the attached transcript of proceedings:
>
> > I deny your motion for the following reasons: I don't think that it was at all suggestive, she had seen over a thousand pictures, got it

---

[5]The citation Petitioner provides for this case is not accurate. The closest *Beeler* case from the district court of Maine in the year 1999, is located at *United States v. Beeler*, 62 F.Supp.2d. 136 (D.Me. July 1, 1999).

down to three.  As far as I'm concerned, she's identified him in court.  She identified him today.  She had plenty of opportunities- she spent some time with him, not  only a little time in the car, time in 7-Eleven [sic] where she finally was able to indicate that somebody should call the police.  She had plenty of time to look at him.

The trial testimony of Kimberly Ann Moore appears on pages 80 through 118 of the "Transcript of Trial Proceedings," filed separately in this cause.  It was light out when a black kid with a gun entered her front passenger seat as she was stopped at a traffic light.  He threatened her at gunpoint, ordered her to drive to an abandoned duplex, took her money, punched her in the face, threatened to blow her kneecap off, ordered her to drive to Hess Mart and withdraw all her money from the ATM inside.  She signaled a clerk to call police, and stalled at the ATM until her assailant fled.  Her description of him resulted in a computer composite, introduced into evidence.  Moore identified Defendant in court, and said that she recognized his voice when she heard him speak at an unrelated court proceeding a couple weeks prior to trial.  The State submits that this is a sufficiency of evidence argument, brought in the guise of ineffective assistance of counsel.  Insufficiency of the evidence cannot be raised in a motion for post conviction relief.

Exh. 7 at 2-3.  Petitioner appealed the denial of this claim in his initial appeal.  The appellate court *per curiam* affirmed the post-conviction court's denial of relief on this ground.  Exh. 9. Therefore, the Court applies the deferential standard for federal court review.

Following a review of the record and the applicable law, the Court concludes that the State court's adjudication of Ground One was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established law, and

was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The post-conviction court, in denying this ground, cited to *Strickland,* the correct governing standard in evaluating Petitioner's ineffective assistance of counsel claim.   The State court also correctly applied *Strickland*, in evaluating whether counsel was deficient for failing to procure a video expert.   Exh. 8 at 5-6.

At the outset, the Court is not persuaded by Petitioner's reliance on the district court's decision in *Beeler.   Beeler*, 62 F.Supp.2d at 148-150.   The *Beeler* case pertains to admissibility of evidence, specifically a duplicate copy of a surveillance videotape, which is entirely unrelated to Petitioner's claim *sub judice*.   Petitioner's claim that counsel rendered deficient performance by failing to procure a video expert is indeed speculative at best because a video expert could have also confirmed that it *was* Petitioner on the videotape surveillance at the Hess gas station.   Moreover, the Court cannot find that defense counsel's performance prejudiced the Petitioner because, as noted by the post-conviction court, the victim, who had the ability to see Petitioner's face and hear his voice, assisted authorities in making a composite picture of the assailant, the victim recognized that Petitioner was her assailant when she saw him in person, the victim recognized the Petitioner's voice as that of the assailant,

and she also identified the Petitioner out of thousands of photographs that the police showed her the following day after the incident. The victim testified to these facts at trial. Therefore, Petitioner has not shown that the State court's decision was an unreasonable application of the *Strickland* standard. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)(stating "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable- a substantially higher threshold."). Accordingly, Petitioner is denied relief on Ground One.

### 2. Failure to Peremptorily Strike a Juror

In Ground Two, Petitioner alleges that defense counsel rendered ineffective assistance when counsel failed to peremptorily strike Juror Bryden, who expressed "discomfort" with presiding over a criminal case. Petition at 7. Petitioner submits that Juror Bryden had "a problem with the concept of reasonable doubt" and admitted to favoring the prosecution. *Id.* at 8. Petitioner argues that a "fundamentally competent attorney would have reasoned that Juror Bryden could not provide the Petitioner with his constitutional right to a fair trial by an impartial juror." *Id.*

In Response, Respondent first directs the Court to the post-conviction court's order of denial because Petitioner raised this claim as his first claim for relief in his Rule 3.850 Motion.

Response at 18-19.   Respondent submits that the State court's denial of this claim was objectively reasonable because Petitioner cannot show that the juror was "*actually biased* against him." *Id.* at 20.   Respondent refers the Court to Juror Bryden's voir dire responses in the trial transcript.   *Id.* (emphasis in original) (citing Exh. 22, Vol. 8, pp. 46-48, 56-57).   Respondent submits that jury selection involves trial strategy and is ill suited for judicial second guessing.   *Id.* at 21 (citing *Romero v. Lynaugh*, 884 F.2d 871, 878079 (5th Cir. 1989)).   Respondent argues that trial counsel did not render deficient performance and Petitioner cannot show prejudice.   *Id.* at 22-23.

The record reveals that Petitioner raised this claim in his Rule 3.850 Motion as his first ground for relief. Exh. 5 at 4-6. The post-conviction court denied Petitioner relief on this claim, incorporating by reference the State's argument in response to Petitioner's Rule 3.850 Motion.   Exh. 8 at 1.   The post-conviction court's reason for denial is as follows:

> Defendant claims counsel was ineffective for failure to challenge juror William Bryden.   Jury selection appears on pages 11 through 71 of "Transcript of Trial Proceedings," filed separately in this cause.   On pages 61 and 62, counsel advised the Court that, as soon as the 23-member venire entered the courtroom, Defendant was "alarmed" that there were no blacks.   The question to and responses of Bryden appear on pages 46 through 48, 56 and 57.   The record reflects that Defendant was present during jury selection, consulted with his attorney, and assured the Court that the panel was acceptable to him before the jury was sworn (pages 65, 66, 70, and 71). Defendant states: "the defense attorney allowed a biased juror to preside over the defendant's case which

contributed to the jury's verdict of guilty."  A mere conclusory allegation of ineffective assistance is insufficient to warrant an evidentiary hearing.  See *Jones v. State*, 845 So. 2d 55 (Fla. 2003), and *Kennedy v. State*, 547 So. 2d 912 (Fla. 1989).  Moreover, the record not only refutes Defendant's allegation of Bryden's bias, but also reflects that Defendant accepted the jury panel, including Bryden.  See *Armstrong v. State*, 862 So. 2d 705 (Fla. 2003) where a claim that counsel had failed to adequately question or strike a juror was denied when the record indicated that Armstrong conferred with counsel on several occasions during voir dire, and his contention that additional questioning of the juror would have revealed a bias was deemed to be a mere conclusory allegation that was refuted by the record.

Exh. 7 at 2.  Petitioner appealed the post-conviction court's adverse ruling in his appellate brief after remand, and the appellate court *per curiam* affirmed the lower court's ruling. *See* Exh. 17 (appellate brief); Exh. 18 (appellate order). Therefore, the Court applies the deferential standard for federal court review.

Following a review of the record and the applicable law, the Court concludes that the State court's adjudication of Ground Two was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors.  *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  However, in order for a petitioner to show that he was prejudiced by a juror, a petitioner must demonstrate

that the juror was actually biased against him. *Smith v. Phillips*, 455 U .S. 209, 215 (1981). In Florida, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions of the law given by the court." *Smith v. State*, 28 So. 3d 838, 859 (Fla. 2009)(citations omitted); *see also Irvin*, 366 U.S. 717, 723 ("[T]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is insufficient to rebut the presumption of a prospective juror's impartiality would be to establish the impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict  based on the evidence presented in court.").

Here, the record containing the transcript of *voir dire* refutes Petitioner's claim. The State court's determination of the facts was not unreasonable.  The record shows that defense counsel and the State decided to strike several jurors from the venire for various reasons. *See generally* Exh. 8 at 61-70.  Petitioner actively participated in the selection of the jury and even stepped out of the courtroom with defense counsel to discuss which jurors should be stricken from the venire. *Id.* at 66.  Upon Petitioner and counsel's return to the courtroom, defense counsel struck a juror. *Id.*  At the conclusion of the jury selection, Petitioner acknowledged that the jury was acceptable to him. *Id.* at 70.

Although Juror Bryden did express his preference during *voir dire* for being a juror in a civil case, Bryden specifically acknowledged that he would not make his decision on the case until he heard all of the facts presented in the case. When questioned a second time, Juror Bryden again answered in the affirmative that he would make the right decision based on the evidence presented. Exh. 8 at 46–48. Thus, despite Juror Bryden's other comments, Bryden's answers during *voir dire* satisfied the federal constitutional requirement. Therefore, Petitioner has not shown that the State court's decision was an unreasonable application of the *Strickland* standard. Accordingly, Petitioner is denied relief on Ground Two.

### 3. Failure to Properly Cross-Examine the Victim

In Ground Three, Petitioner faults defense counsel for failing to ask the victim, Kimberly Moore, about her statement "[w]hat if we've got the wrong guy and the real perpetrator is still out there?" during cross-examination. Petition at 10–11. Petitioner states that during the trial he "penned a note" to defense counsel instructing counsel to ask the victim about the aforementioned statement. *Id.* Petitioner also states that he asked defense counsel to "walk [the victim] through the positive identification process." *Id.* at 11. Petitioner believes that the victim's answers to these questions would have "discredited" the victim's positive identification of Petitioner. *Id.* Because defense

counsel failed to do this, Petitioner states that counsel rendered deficient performance that prejudiced him.  *Id.* at 11-12.

In Response, Respondent points out that Petitioner is referring to a hearsay statement made by the victim, which the prosecutor referred to during the pre-trial suppression hearing. Response at 23.  Respondent further notes that Petitioner raised this claim for relief in his Rule 3.850 Motion and that the post-conviction court denied Petitioner relief.  *Id.* at 25 (citing Exh. 16 at 4-5).  Moreover, Respondent submits that the victim actually admitted during trial that she was concerned about the lack of fingerprint evidence in connection with her discussing her desire to observe Petitioner in person to be certain about her identification of him.  *Id.* at 25.  As such, Respondent avers that defense counsel cannot be deemed ineffective for failing to question the victim about this topic on cross-examination, because the jury already heard the testimony and such questioning would have amounted to cumulative evidence.  *Id.*  In Reply, Petitioner maintains that defense counsel's failure to question the victim, pursuant to Petitioner's direction, prejudiced him because "the jury never had the chance to hear [the victim's] obvious doubts as to whom the Petitioner actually was."

Upon review of the record, the Court notes that Petitioner raised this ground for relief in his initial Rule 3.850 motion as his tenth ground for relief.  Exh. 5 at 25.  The post-conviction

court cited to the *Strickland* standard and denied Petitioner relief on this claim, finding:

> [T]he trial transcript reflects that the victim was questioned about her doubt concerning the identification of Defendant on both direct and cross-examination. Therefore, once again, Defendant's allegation is conclusively refuted by the record.  See the victim's trial testimony pp. 113-118, attached hereto.

Exh. 16 at 4-5.  The appellate court *per curiam* affirmed the post-conviction court's order.  Exh. 17.  Therefore, the Court applies the deferential standard for federal court review.

Following a review of the record and the applicable law, the Court concludes that the State court's adjudication of Ground Three was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The post-conviction court correctly identified the *Strickland* standard and properly applied it to the facts of Petitioner's case. *See* Exh. 16 at 4-5.  Significantly, the Court finds the statement Petitioner wishes counsel would have cross-examined the victim about, "what if it wasn't him," is taken out of context.  During the suppression hearing, the prosecution called Jean-Paul Galasso, another prosecutor, to testify about the reasons why the victim decided to attend an unrelated court hearing where Petitioner would

be present.   *See* Exh. 22, Vol. II at 40-41.   Specifically, Mr.

Galasso's testimony was as follows:

> Q.  Did you instruct her [the victim] in any way
> to ID Mr. Kafus as he came into court?
>
> A.  No, I did not.
>
> Q.  Okay.  What were your instructions to her?
>
> A.   Well, what happened was while I was
> discussing the case with her on the phone, she
> had   asked   me   about   the   fingerprints;
> apparently they tried to take fingerprints
> offer [sic] of a bag left by the perpetrator
> in her car.   There was a report, it didn't
> list any specific items, but it said latent
> prints were not identified to the suspects.
> She had asked me about that, I told her that
> the prints did not come back to Mr. Kafus.
>
> She then started crying hysterically, saying what
> if it wasn't him, the real guy would still be on
> the street.
>
> I asked her if she was certain about her
> identification.
>
> She said that she was, but that she had only
> identified him from pictures.
>
> I asked her if she saw him again in person
> would she been [sic] certain of who he was, if
> she saw him again in person.
>
> She said that she would definitely be able to
> identify him if she saw him in person.

Exh. 22, Vol. II at 41-42.   Thus, the hearsay statement elicited

during the suppression hearing that Petitioner believes would have

cast doubt on his guilt is taken out of context.   The subsequent

hearsay  statements  elicited  during  the  suppression  hearing

establish that the victim unequivocally thought she could identify the perpetrator, and she did identify Petitioner as the perpetrator. Additionally, as noted by the State court in denying Petitioner relief on this claim, during the trial the jury heard testimony from the victim regarding the lack of fingerprint evidence and any doubt she had with identifying the Petitioner as the person who attacked her. Exh. 16 at 115. The victim testified that the fingerprints lifted from items in her car were not conclusive. The victim further testified that she identified the Petitioner as the assailant by selecting his photo out of approximately 1200 other photos and that she recognized him when she saw him in person. *Id.* at 114-115. Defense counsel cannot be deemed deficient for failing to cross-examine the witness when the jury had already heard testimony from the victim about the lack of fingerprint evidence. Thus, Petitioner's assertions that the jury's verdict would have been different had they heard the victim's "obvious doubts" as to who the perpetrator actually was is without merit. The jury heard the victim's testimony that the fingerprint evidence taken from her car was not conclusive, but that she was certain that her identification was correct. Therefore, Petitioner has not shown that the State court's decision was an unreasonable application of the *Strickland* standard and Petitioner is denied relief on Ground Three.

### 4. Failure to Investigate Photo Discrepancy

In Ground Four, Petitioner alleges that counsel rendered ineffective assistance when he failed to investigate the discrepancy between the photographs of Petitioner and the photographs that the victim "actually" selected as the perpetrator from the array of photographs. Petition at 13. Petitioner argues that the photographs the victim selected in the photo line-up were not photographs of him. *Id.*

In Response, Respondent notes that the post-conviction court denied Petitioner relief because he could not show prejudice. Response at 25-26. Respondent concedes that there was a discrepancy between the numbers on the photographs the victim selected and the copy of the photo lineup submitted by the State in discovery. *Id.* at 25 (citing Exh. 12: Appendix to State's Supplemental Response to Defendant's "Motion for Post Conviction Relief," Criminal Investigation Report (Details/Narrative Continued), and page 44 of discovery.). Nevertheless, Respondent maintains that the post-conviction court correctly concluded that Petitioner failed to show how this immaterial discrepancy affected the outcome of his trial. *Id.* at 26.

Petitioner raised this claim in his Rule 3.850 Motion as his sixth claim for relief. Exh. 5 at 17. The post-conviction court denied Petitioner relief noting that

> The State alleges that a review of the discovery shows no
> discrepancy. Moreover, even if there was a discrepancy,

> Defendant has failed to show how this discrepancy, which
> was immaterial, would have affected the outcome of the
> trial.

Exh. 16 at 3.   The appellate court *per curiam* affirmed the post-conviction court's decision.   Exh. 18.   Therefore, the Court applies the deferential standard for federal court review.

Upon review of the record and consistent with applicable law, the Court concludes that the State court's adjudication of Ground Four was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The post-conviction court correctly identified the *Strickland* standard and properly applied it to the facts of Petitioner's case, finding that Petitioner did not show prejudice as a result of this immaterial discrepancy.   Respondent concedes that there is a discrepancy in the numbers associated with the photographs the victim selected during the photo lineup as contained in the probable cause affidavit submitted by Detective Monahan, and those numbers listed on the photo lineup sheet with the 3 circled photos that the victim selected as photos of her assailant.   However, this discrepancy is immaterial.   In other words, inconsistency with the numbers of the photographs does not *ipso facto* mean that the photographs the victim selected were not photographs of the Petitioner.   The record conclusively shows that the victim chose 3

photographs of her assailant out of more than 1,000 photographs, without any assistance or input from the police.  After the victim selected the 3 photographs from the array, police authorities confirmed that the photos were of the same individual and that the individual depicted was the Petitioner, Jason Kafus.  Exh 12, State's supplement, Aff. Detective Monahan; *see also* Exh. 22, Vol II at 96-97 (victim's testimony regarding photo lineup).  The record conclusively establishes that the victim identified the Petitioner as the perpetrator in the suppression hearing and also on the day of trial. *Id.* at 97.  To the extent photographs of the Petitioner were admitted into evidence, the prosecutor had the Petitioner identify the photographs of himself, consisting of his driver's licence photos, before moving the exhibits into evidence. Exh. 22, Vol. 2 at 175-76.  Therefore, Petitioner has not shown that the State court's decision was an unreasonable application of the *Strickland* standard and Petitioner is denied relief on Ground Four.

**5.  Failure to Raise Argument in Motion to Suppress Hearing**

In Ground Five, Petitioner faults counsel for his performance during the pre-trial suppression hearing.  Petition at 15-16. Specifically, Petitioner avers that defense counsel should have argued that the photographic lineup was impermissibly suggestive because the lineup contained more than one photograph of the Petitioner.  *Id.* at 16.  Petitioner also submits that counsel

should have argued that the police asking the victim to "narrow" her selections down was impermissibly suggestive. *Id.*

In Response, Respondent states that the post-conviction court properly denied Petitioner relief on this claim. Response at 27. Respondent submits that the record refutes Petitioner's claim because defense counsel argued the correct standard of review during the motion to suppress hearing, which is whether the process was impermissible suggestive. *Id.* (citing Exh. 22, Vol. II at 71-72).

Petitioner raised this claim in his Rule 3.850 Motion as his seventh claim for relief. Exh. 5 at 19. The post-conviction court denied Petitioner relief finding that:

> [T]his issue was raised and heard on the Motion to Suppress, and in a *pro se* Motion for New Trial. See a copy of the Motion for New Trial, attached hereto. Therefore, Defendant's allegation is conclusively refuted by the record.

Exh. 16 at 3-4. Petitioner appealed the post-conviction court's adverse decision, Exh. 17 at 8, and the appellate court *per curiam* affirmed the post-conviction court's decision. Exh. 18. Therefore, the Court applies the deferential standard for federal court review.

Following a review of the record and the applicable law, the Court concludes that the State court's adjudication of Ground Five was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established law, and

was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The post-conviction court correctly identified the *Strickland* standard and properly applied it to the facts of Petitioner's case, finding that the record refuted the Petitioner's claim. The record establishes that defense counsel *did* argue that the photo lineup was impermissibly suggestive and did question the validity of the victim's identification of Petitioner. *See* Exh. 22, Vol. II at 71-73. While the court did not locate the two specific arguments[6] that Petitioner wishes defense counsel raised when arguing that the photo lineup was impermissibly suggestive, Petitioner cannot show that the argument defense counsel pursued fell below an objective standard of reasonableness. *Span v. Sec'y, Dept. of Corr.*, 401 F. App'x 451, 452 (11th Cir. 2010). The trial court considered, but ultimately rejected defense counsel's arguments and denied the motion to suppress. There is no reason to believe that had defense counsel raised the two additional objections proposed by Petitioner during the suppression hearing that the trial judge would have been persuaded to rule in favor of the defense. *See Id.* at 73-74 (trial judge's ruling denying motion to suppress, noting that the victim identified Petitioner by  photo, in person, and again in person during the hearing). Defense counsel cannot be faulted for raising

---

[6]The Court notes that the victim's testimony during the motion to suppress hearing was that she went through 1,039 photographs, narrowing her selection down to 3 photos. Exh. 22, Vol. II at 54.

an argument that the trial court found lacked merit.  Therefore, Petitioner has not show that the State court's decision was an unreasonable application of the *Strickland* standard.  Petitioner is denied relief on Ground Five.

### 6.  Failure to Subpoena Two Hess Employees

In Ground Six, Petitioner submits that defense counsel rendered ineffective assistance because he knew from discovery that there were two Hess employees, Gino Gabino and Debby Forkel, who could have been exculpatory witnesses, but counsel failed to subpoena them to testify at trial.  Petition at 17-18.  Petitioner also faults counsel for "failing to investigate" "how much of the robbery suspect they observed."  *Id.* at 18.

In Response, Respondent refers the Court to the post-conviction court's order denying this ground in the Rule 3.850 Motion and submits that the court's decision was reasonable.  Response at 27-28.  In particular, Respondent avers that Petitioner's claim is mere speculation because there is no evidence that the two Hess employees would have testified that Petitioner was not the assailant.  *Id.* at 28.

Petitioner raised this claim in his Rule 3.850 Motion as his eighth ground for relief.  Exh. 5 at 21.  In denying Petitioner relief on this claim, the post-conviction court wrote, in pertinent part:

> The State alleges that neither name [Gino Gabino and Debby Forkel] appears in discovery nor the court file.

> The only reference to the two employees was during the
> victim's deposition, where the victim replied that she
> did not get the employees' names.  Further, in Detective
> Monahan's deposition he testified that for the most part
> the clerks were busy and were unaware of what was
> happening.  See Moore's (victim's) deposition pages 14-18
> and Monahan's deposition pages 5, 6, and 12, attached
> hereto.  Therefore, Defendant's pure speculation that the
> employees' testimony would have exonerated him is
> unsupported by the record.

Exh. 16 at 4.  Petitioner appealed the post-conviction court's
adverse decision, Exh. 17 at 12, and the appellate court *per
curiam* affirmed the lower court's order.  Exh. 18.  Therefore, the
Court applies the deferential standard for federal court review.

Following a review of the record and the applicable law, the
Court concludes that the State court's adjudication of Ground Six
was not contrary to clearly established federal law, did not
involve an unreasonable application of clearly established law, and
was not based on an unreasonable determination of the facts in
light of the evidence presented in the State court proceedings.
The post-conviction court correctly identified the *Strickland*
standard and properly applied it to the facts of Petitioner's case,
finding that the two Hess employees would not have had sufficient
information and were not even included on the discovery list.
Petitioner cannot demonstrate prejudice according to *Strickland*
because he has not shown that if either of the Hess employees
testified, that their testimony would have provided a reasonable
probability, sufficient to undermine confidence in the outcome,
that the outcome of the proceeding would have been different.  The

Court need not address the performance prong after finding Petitioner cannot show prejudice. *Holladay*, 209 F.2d at 1248. Petitioner has not show that the State court's decision was an unreasonable application of the *Strickland* standard. Accordingly, Petitioner is denied relief on Ground Six.

**7.  Issues Related to Petitioner's Prior Acts of Dishonesty**

The Court will address Grounds Seven, Eight, and Nine together because these claims all involve different aspects of the "State's" introduction of evidence that Petitioner had previously lied under oath. *See* Petition. The evidence Petitioner takes issue with consisted of letters[7] handwritten by the Petitioner admitting that Petitioner had lied under oath in the case *State v. Troy Smith*. Response at 29 (citing Exh. 22, Vol. 3, 96-97). In Ground Seven, Petitioner faults defense counsel for failing to object to the prosecutor's statement during closing argument that "You can read the statements, either he lied when he said he lied under oath or he is a really good liar under oath." Petition at 19. Petitioner

---

[7]The content of the Petitioner's two letters that the defense introduced into evidence are as follows. An August 22, 2001 letter states: "To Whom It May Concern: I [,] Jason Kafus [,] will [sic] like to state that I lied under oath concerning the State vs Troy Smith. I did not see Troy Smith do any of the following actions I said on tape." Petitioner's second letter, which is undated, states as follows: "To Whom it May Concern, I [,] Jason Kafus[,] will [sic] like to make a statement concerning the case of Troy Smith vs. the State of Florida. I, Jason Kafus, lied under oath. I did not see Troy Smith do any of the allegations I stated on tape. I was pressured and threatened at the time of the statement I made on tape. Please forgive me for all the pain and hurt I have caused." Exh. 22, Vol. 3 at 96-97.

avers that these statements shifted the burden of proof to him and were "so inflammatory" that it rendered his trial unfair. *Id.* at 20-21. In Ground Eight, Petitioner faults defense counsel for failing to object to the "State's" introduction of these two exhibits showing that Petitioner had previously lied under oath in another case. Petition at 22. Petitioner believes that counsel's objection to the introduction of this evidence would have led to Petitioner's acquittal. *Id.* at 24. And, in Ground Nine, Petitioner faults counsel for failing to preemptively know that the prosecution was going to introduce evidence revealing Petitioner's prior acts of dishonesty. Petition at 25. Petitioner submits that had defense counsel known that the "State" would introduce such evidence, then defense counsel could have taken steps to "defend against such prejudicial statements." *Id.* at 25.

In Response, Respondent refers to the relevant direct examination of Petitioner by defense counsel, and submits that exhibits 13 and 14, which were authenticated by Petitioner, were properly moved into evidence by the defense. Response at 29-30. With respect to the Petitioner's claim regarding the statements in the prosecutor's closing argument, Respondent submits that the prosecutor's comments were proper because she was relying on evidence adduced during the trial. *Id.* at 30. With regard to the introduction of evidence, Respondent points out that it was in fact

the defense counsel, not the prosecutor, who moved the evidence into trial as part of his trial strategy. *Id.*

Petitioner raised Ground Seven, concerning defense counsel's failure to object to the prosecutor's closing argument, in his supplemental Rule 3.850 Motion as his eleventh ground for relief. Exh. 14 at 5. The post-conviction court denied Petitioner relief, finding as follows:

> The State rightly submits that it is proper to comment on the evidence during closing argument. Therefore, counsel could not have been ineffective for failing to object to a meritless issue. *Tefeteller*, at 1020. Moreover, improper closing arguments should and could have been raised on direct appeal, and are procedurally barred. *Oats v. Dugger*, 638 So.2d 20, 21 (Fla. 1994).

Exh. 16 at 5. Petitioner appealed the adverse decision, Exh. 17 at 15, and the appellate court *per curiam* affirmed the lower court's order. Exh. 18. Therefore, the Court applies the deferential standard for federal court review of the State adjudications of Ground Seven.

Following a review of the record and the applicable law, the Court concludes that the State court's adjudication of Ground Seven was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The post-conviction court correctly identified the *Strickland* standard and properly applied it to the facts of Petitioner's case

finding that defense counsel could not be deemed ineffective for failing to object to a meritless issue.

Petitioner wishes that his counsel would have objected to the following statement made by the prosecutor during closing argument: "You can read the statements, either he lied when he said he lied under oath or he is a really good liar under oath."  Petition at 19.  The Court cannot conceive of how Petitioner was prejudiced by the prosecutor's statement because the jury had already heard the evidence regarding Petitioner's prior handwritten letters in which Petitioner admitted to lying under oath in another criminal proceeding against a person named Troy Smith.  *See supra* footnote 7; Exh. 22, Vol. 7 at 174-175.  Petitioner has made no argument that he suffered any additional prejudice by the prosecutor's reference to evidence that the jury had already heard.  Because this evidence was placed before the jury by Petitioner's counsel, he cannot now complain that his trial was fundamentally unfair by the prosecutor's reference to the evidence.  *Oliver v. Wainwright*, 795 F.2d 1524, 1531 (11th Cir. 1986).  Therefore, Petitioner has not shown that the State court's decision was an unreasonable application of the *Strickland* standard.  Petitioner is denied relief on Ground Seven.

In Ground Eight, Petitioner claims defense counsel rendered ineffective assistance for not objecting to the "State's" introduction of Petitioner's letters showing that he previously

lied under oath.   Petitioner raised Ground Eight in his
supplemental Rule 3.850 Motion as ground twelve.   Exh. 13 at 7.   In
Ground Nine, Petitioner faults defense counsel for not knowing that
the prosecutor would introduce the letters and taking pre-emptive
action.   Petitioner raised Ground Nine in his supplemental Rule
3.850 Motion as his thirteenth ground for relief.   Exh. 13 at 9-11.

The post-conviction court denied Petitioner relief on these
claims, finding as follows:

> A review of the record shows that Exhibits 13 and 14 were
> authenticated by the Defendant and moved into evidence by
> the defense during direct examination.   See Defendant's
> trial testimony, attached hereto.   Counsel could not have
> been ineffective for failing to object to evidence he
> introduced into evidence, apparently, as part of his
> trial strategy.

Exh. 16 at 5.   The post-conviction court denied Petitioner relief
on Ground Nine finding as follows:

> Again, counsel could not have been ineffective for
> failing to object to evidence he introduced into
> evidence, apparently as a part of his trial strategy.

*Id.*   Petitioner appealed the adverse decision, Exh. 17 at 15-16,
and the appellate court *per curiam* affirmed the lower court's
order.   Exh. 18.   Therefore, the Court applies the deferential
standard for federal court review of the State's adjudications of
Grounds Eight and Nine.

Following a review of the record and the applicable law, the
Court concludes that the State court's adjudications of Grounds
Eight and Nine were not contrary to clearly established federal

law, did not involve an unreasonable application of clearly established law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  The post-conviction court correctly identified the *Strickland* standard and properly applied it to the facts of Petitioner's case finding that it was defense counsel who introduced the evidence, apparently as a part of trial strategy. In Reply, Petitioner suggests that the "court reporter erroneously contributed [sic] this testimony to defense counsel."  Reply at 10.

The Court has reviewed the trial transcript and finds no error in the transcript of the trial with regard to this matter.  Exh. 22, Vol. 7 at 166, 174.  The trial transcript is clear that the defense introduced the evidence Petitioner now disputes during the direct examination of Petitioner.  *Id.*  The defense called the Defendant Jason Kafus as a witness, presumably for the purpose of introducing evidence that Petitioner did not rob the victim and was not the person captured on the Hess video surveillance.  *See generally Id.*  During the course of direct examination, defense counsel introduced some unfavorable evidence pertaining to Petitioner, which could have been more harmful to the Petitioner if the State was the first to introduce the evidence.  For example, defense counsel first introduced the fact that Petitioner had been convicted of other felonies.  *Id.* at 172.  With regard to the introduction of Petitioner's letters, the record shows that defense

counsel knew that the State was aware of Petitioner's letters as indicated by the fact that these exhibits were labeled as "state's exhibits" in the trial transcript.[8]  *Id.* at 175.  Defense counsel, however, introduced the Petitioner's letters into evidence, apparently as a matter of trial strategy.  *Id.* at 174.  By introducing the unfavorable letters, defense counsel attempted to establish Petitioner's credibility with the jury and show the jury the basis of Petitioner's prior perjury conviction.  This Court will not second-guess defense counsel's trial strategy.  *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010).  Therefore, Petitioner has not shown that the State court's decision was an unreasonable application of the *Strickland* standard.  Petitioner is denied relief on Grounds Eight and Nine.

### 8.   Trial Court Erred in Denying Motion to Suppress

In Ground Ten, Petitioner contends that the trial court erred when it denied Petitioner's motion to suppress.  Petition at 28.  Petitioner states that the prosecutor told the victim to go to a pre-trial hearing in an unrelated matter to see if she could identify the Petitioner.  *Id.*  Petitioner submits that this type of procedure is "unnecessarily suggestive and violates a Petitioner's right to assistance of counsel."  *Id.*  Because the victim's

---

[8]It remains unclear why the exhibit was not moved into evidence as a "state" exhibit.  Nevertheless, this point is immaterial.

identification was the only evidence linking Petitioner to the crimes, Petitioner contends that the error was harmful. *Id.*

In Response, Respondent refers the Court to the State's argument in its answer brief to Petitioner's direct appeal. Respondent submits that the State's answer brief cited the correct standard of review. Response at 32. Respondent recites pertinent, relevant facts and argues that under the totality of the circumstances, there is no reasonable likelihood that the pretrial identification procedure that took place resulted in the misidentification of Petitioner as the perpetrator. *Id.* at 34-35.

Petitioner raised this claim of trial court error on direct appeal.[9]  Exh. 1.  On direct appeal, the appellate court *per curiam* affirmed the trial court's decision, thereby denying Petitioner relief.  Exh. 3.

Here, Petitioner does not argue that the State courts' finding was contrary to federal law.  Petition at 28.  Instead, Petitioner

---

[9]Petitioner also raised Ground Ten as a hybrid ineffective assistance of counsel claim and trial court error claim, in his Rule 3.850 Motion as his fifth ground for relief.  Exh. 5 at 15-17. In the 3.850 Motion, Petitioner argued that the victim already knew his name as being a suspect in the case through conversations with the prosecution.  *Id.*  Thus, when she heard the trial judge call Petitioner's name, the process was suggestive.  *Id.*  Petitioner argued that it was error for the trial court to deny the motion to suppress after hearing this evidence.  *Id.*  The post-conviction court noted that this claim was raised in Petitioner's motion to suppress, and denied Petitioner relief finding that defense counsel could not be deemed ineffective for failing to prevail on an issue that was properly raised and properly rejected by the trial court. Exh. 16 at 3, ¶7.

argues that the trial court erred in denying his suppression motion because the victim's attendance at an unrelated hearing at which Petitioner was present was suggestive.   *Id.*   In other words, Petitioner believes the State court's ruling was an unreasonable application of clearly established federal precedent.   *Id.* Petitioner cites to "*Moore v. Illinois*, 434 U.S. 220 (1977); *State v. Walker*, 429 So. 2d 1301 (Fla. 4th DCA 1983); and *Simons v. State*, 398 So. 2d 162 (Fla. 1st DCA 1980)" in support of his claim. *Id.*   In his Reply, Petitioner asserts that the "facts speak for themselves."   *See* Reply at 11.

The Eleventh Circuit Court of Appeals has adopted a two-step analysis for determining whether identifications based on a lineup or a photo array are so unreliable as to violate due process. *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987), *cert. denied*, 485 U.S. 964 (1988).   First, the Court must determine whether the original identification procedure was unduly suggestive; and, if it was not unduly suggestive, then the inquiry ends.   *Id.* at 1021.   If the identification procedure was unduly suggestive, then the Court must determine, given the totality of the circumstances, whether the procedure created a substantial risk of irreparable misidentification at trial.   *Id.* (citing *Dobbs v. Kemp*, 790 F.2d 1499, 1506 (11th Cir. 1986), *modified in part on other grounds*, 809 F.2d 750 (11th Cir. 1987); *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. Unit A 1981), *cert. denied*,   455 U.S.

1022 (1982)).  "Under this analysis, 'reliability is the linchpin in determining the admissibility of identification testimony.'" *Williams,* 826 F.2d at 1021 (citing *Manson v. Brathwaite*, 432 U.S. 98, 113 (1977)).  In *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972), the United States Supreme Court identified several factors for the Court to consider in evaluating "the likelihood of misidentification," including: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.  *Id. at* 199-200; *see also Irwin v. McDonough*, 243 F. App'x 486, 491-92 (11th Cir. 2007)(discussing *Neil* factors).

The Court does not find that the State court's rejection of Petitioner's claim is objectively unreasonable in light of the Supreme Court precedent, or an unreasonable determination of the facts based on the evidence presented.  Upon conclusion of the hearing, the trial judge denied Petitioner's motion to suppress, finding as follows:

> I deny your motion for the following reasons:  I don't think that it was at all suggestive, she had seen over a thousand pictures, got it down to the three.
>
> As far as I'm concerned, she's identified him in court. She identified him today.  She had plenty of opportunities- she spent some time with him, not only a little time in the car, time in 7-Eleven where she

finally was able to indicate that somebody should call
the police.  She had plenty of time to look at him.

Exh. 22, Vol. 2 at 73-74.

Upon review of the record, the Court finds the State court's
decision was reasonable.  The record establishes that the in-court
identification was not impermissibly suggestive.  And, even if the
in-court identification is deemed to be impermissibly suggestive,
the trial judge looked to the totality of the circumstances and
found the victim's identification of Petitioner as her assailant
reliable.

During the suppression hearing, evidence was introduced
explaining that after a fingerprint analysis on some items in the
victim's car came out inconclusive, the victim attended an
unrelated court hearing, at which the person who she had identified
in the photo lineup (the Petitioner) was going to be present.[10]
Exh. 22, Vol. 2 at 41-42.  The victim attended this unrelated
hearing with only her victim advocate, at which Petitioner was
present.  *Id.* at 45.  The victim was certain that she could
identify the assailant in person if she saw him.  *Id.* at 42.  At
this point in time, the victim had already helped officials draw a
computer composite of her assailant and had identified the

---

[10]Petitioner does not allege that he did not have counsel at
this unrelated hearing.  *See generally* Exh. 22, Vol. 22; *Id.* at 73.

Petitioner as the assailant in three photographs, after viewing over one thousand photographs.  *Id.* at 53, 54, 63.

The victim testified that Petitioner was wearing a white shirt with a tie and slacks at the unrelated court hearing.  *Id.* at 44. As soon as Petitioner entered the courtroom, the victim identified him as her assailant.  *Id.* at 47.  The victim advocate did not know what Petitioner looked like and did not prompt the victim in any way.  *Id.* at 46.  Although the Petitioner entered the courtroom from the holding cell area, the record reflects that unless a person was very familiar with the courtroom, no one would know it was a holding cell area.  *Id.* at 48.  The victim, in fact, testified that she did not know Petitioner entered the courtroom from a holding cell.  *Id.* at 65.

The State courts' rejection of Petitioner's claim reflects the conclusion that the identification was reliable.  The record shows that the victim testified that on November 15, 2011, a kid jumped in her car with a gun and said "this is a mother fucking robbery bitch" and told her to drive.  *Id.* at 51.  The perpetrator was in her car sitting next to her for at least an hour in the day light. *Id.* at 52.  The victim went to a Hess station where she parked the car, got out and the perpetrator grabbed her keys.  They both walked into the gas station and the victim mouthed to the cashier to call the police.  The victim looked at the perpetrator when he "got in" her face "and said did you tell them to call the police"

and she stated that she did not.  *Id.* at 52.  During trial, the victim testified that she had the opportunity to look at the assailant several times in the face.  Exh. 22, Vol. II at 116-117.

On the day the incident occurred, the victim gave the police a description of the perpetrator.  *Id.* at 10, 52, 56.  The victim described the perpetrator as having "dread locks, he was tall and skinny, he was black, he was very young."  *Id.* at 53.  The victim developed a computer composite without seeing any photographs of the perpetrator.  *Id.* at 54.  She did not know the name of the perpetrator.  *Id.*  As stated above, the victim then looked at over 1,000 photographs and narrowed her identification of the assailant down to 3 photos.[11]  *Id.* 54, 63.  Thus, Petitioner has not shown a very substantial likelihood existed of irreparable misidentification.  Because Petitioner has not shown that the State court's decision was contrary to clearly established federal law, involved an unreasonable application of clearly established law, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  Petitioner is denied relief on Ground Ten.

ACCORDINGLY, it is hereby

**ORDERED**:

---

[11]The photographs the authorities showed the victim consisted of all black males with the physical descriptions the victim provided.  Exh. 12, State's Supplemental Exhibit, Aff. Monahan.

1.    The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** with prejudice.

2.    The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).    Rather, a district court must first issue a certificate of appealability (COA).   *Id.*   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).   To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)   Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this 22nd day of March, 2012.

Charlene Edwards Honeywell
United States District Judge

SA: alj

Copies: All Parties of Record